1

2                    UNITED STATES DISTRICT COURT
                          DISTRICT OF NEVADA
3

4   Steven Raymond, et al.,                    Case No. 2:23-cv-01195-CDS-MDC

5                   Plaintiffs                  **Order Granting in Part and Denying in Part Defendants' Motion to Dismiss the Second Amended Complaint**

6   v.

7   Zach Conine, in his official capacity as Nevada
    Secretary of State, et al.,                 [ECF No. 48]
8

9                   Defendants

10

11      This is a putative class action pursuant to 42 U.S.C. § 1983 seeking declaratory,

12  permanent injunctive, and related relief. Plaintiffs Steven and Kyong "Gina" Raymond and Chase

13  Hyon challenge the constitutionality of Nevada's Uniform Unclaimed Property Act ("NUUPA")

14  under the Takings Clause of the Fifth Amendment and the Due Process Clause of the Fourteenth

15  Amendment. Plaintiffs allege that they, as putative class members, had their property seized

16  without notice, generally mishandled, and, at times, sold by the defendants. As a result, the

17  plaintiffs request numerous forms of relief, including, but not limited to, prospective and

18  declaratory relief to stop what they allege are widespread constitutional violations caused by

19  NUUPA.

20      Defendants Zach Conine, Nevada's State Treasurer and administrator of Nevada's

21  unclaimed property program, Danielle Anthony, Deputy Treasurer of Unclaimed Property, and

22  Nevada's State Treasurer's Office move to dismiss the second amended complaint (SAC),

23  arguing that the claims are barred by sovereign immunity; that the SAC "broad[ly] attack[s] . . .

24  the constitutionality of NUUPA," which, if successful, would unravel the state's entire claims

25  process and impact approximately $1 billion currently held by the State; that the plaintiffs fail to

26  state a claim upon which relief can be granted because neither a taking nor a due process

violation occurred; and that the defendants are entitled to qualified immunity. *See generally* ECF No.48.[1] Plaintiffs oppose the motion. *See* Opp'n, ECF No. 52. Therein, they argue that this court has jurisdiction over this action because they are only seeking prospective and injunctive relief, that their claims are exempted from sovereign immunity, that they have demonstrated the NUUPA results in due process and takings clause violations, and that qualified immunity is wholly inapplicable here. *See id.* at 21. Also pending before the court is plaintiffs' motion for leave to file supplemental authority. Mot., ECF No. 57. Defendants oppose the motion. Opp'n, ECF No. 59. For the reasons set forth herein, I grant in part and deny in part the defendants' motion to dismiss the second amended complaint. Further, because the Ninth Circuit has issued a binding decision on the issue of standing, I deny the plaintiffs' motion to file supplemental authority as it is only persuasive.

## I.      Legal standard

The court incorporates the legal standard set forth in resolving the first motion to dismiss here. *See* Order, ECF No. 42 at 2–4.

## II.      Summary of allegations[2]

In their second amended complaint,[3] the plaintiffs challenge the constitutionality of NUUPA, arguing that the statute wrongfully seizes private property and converts it into revenue for use by the state without due process and in violation of the Takings Clause of the U.S. Constitution. *See generally* ECF No. 46. Each individual plaintiff alleges that they had property taken from them by the defendants without notice, knowledge, or consent. *Id.* at ¶¶ 11

---

[1] Defendants previously moved to dismiss the first amended complaint. ECF No. 28. That motion was granted. Order, ECF No. 42. Thereafter, the plaintiffs timely filed a second amended complaint. SAC, ECF No. 46.

[2] Because at the motion to dismiss stage the court must take the allegations in the SAC as true, the court summarizes the allegations here. However, this serves as a summary only and does not serve as a findings of fact.

[3] Plaintiff's complaint contains unredacted personal-data identifiers about various Nevada residents. *See* ECF No. 45 at 18–12. This information is required to be redacted pursuant to Local Rule IC 6-1. Plaintiffs are ordered to redact this information and must refrain from including—or must partially redact—such identifiers in the future. Further details are provided in the conclusion of this order.

1  (Steven), 24 (Gina), 31 (Chase). As it relates to Steven, the SAC alleges that he located property

2  on the NUUPA website[4] that he believed belonged to him, so on August 5, 2024, he filed an

3  online claim for the property, and shortly thereafter the property was returned to him. *Id.* at ¶¶

4  14–19. Steven received a check in the amount of $174.22 from the defendants. *Id.* at ¶ 20. That

5  property is no longer listed on the NUUPA webpage. *Id.* at ¶ 15. The SAC further alleges that

6  Steven lost the time value of his money while it remained in the state's possession and is subject

7  to ongoing harm because "he continues to hold property within the state of Nevada that could

8  be seized by the State without any pre-deprivation notice." *See id.* at ¶¶ 21–22. The SAC states

9  that the past deprivation makes the threat of future, unlawful seizures "not speculative." *Id.* at ¶

10  22.

11  　　　　Gina and Chase set forth similar allegations. Both allege they located property on the

12  NUUPA website and on August 5, 2024 submitted online claims for that property. *Id.* at ¶¶ 25–

13  27 (Gina), ¶¶ 31–34 (Chase). Both received the property, in the form of money, from the state

14  and the property is no longer listed on the website. *Id.* at ¶¶ 27 (Gina), 34 (Chase). Also, like

15  Steven, they allege that they lost the time value of the money while it remained in the state's

16  possession and are subject to ongoing harm because "[they] continue to hold property within

17  the state of Nevada that could be seized by the State without any pre-deprivation notice." *Id.* at

18  ¶¶ 28–29 (Gina), 35–36 (Chase). The SAC states that the past deprivation makes the threat of

19  future, unlawful seizures "not speculative." *Id.* at ¶¶ 29 (Gina), 36 (Chase).

20  **III.　　Discussion**

21  　　　　Two recently decided Ninth Circuit appeals cases aid resolution of this dismissal motion:

22  *Garza v. Woods*, --- F.4th ---, 2025 WL 2435221 (9th Cir. Aug. 25, 2025), and *Mousseau v. Crum*,

23  2025 WL 2437230 (9th Cir. Aug. 25, 2025).[5] In both cases, the plaintiffs brought similar

24  challenges to Arizona and Alaska's Uniform Unclaimed Property Acts, respectively. *See id.* The

25  _____

[4] *See* https://www.nvup.gov/app/claim-search (last accessed on August 29, 2025).

26  [5] *Mousseau* cannot be cited as precedent because the Ninth Circuit simply deferred to its *Garza* decision, *Mousseau*, 2025 WL 2437230, at *1, so the court only cites to *Garza* herein.

1  Ninth Circuit held that the plaintiffs raised viable due process claims but that the plaintiffs'

2  takings claims failed as a matter of law. Applying that precedent, this court reaches the same

3  conclusion: the plaintiffs' due process claim survives dismissal, but their claim under the Fifth

4  Amendment fails as a matter of law.

5      Like both Arizona and Alaska's Uniform Unclaimed Property Acts, NUUPA sets forth

6  the statutory scheme for requirements for holders of property that has been deemed abandoned

7  with the State. As previously explained, the purpose behind NUUPA is to establish a

8  mechanism for rightful owners to claim their property that has been deemed abandoned.[6]

9      NUUPA has specific rules for: (1) taking custody of property that is presumed

10 abandoned (NRS 120A.530);[7] (2) reporting abandoned property;[8] and (3) the process for filing a

11 claim on property that has been deemed abandoned or transferred to the NUUPA's

12 Administrator. Nev. Rev. Stat. § 120A.640. NUUPA also sets forth notice requirements. *See* Nev.

13 Rev. Stat. § 120A.580(1) (setting publication requirements depending on the size of the county

14 where the abandoned property has been paid or delivered). There is no statute of limitations for

15 claiming abandoned property. *See* Nev. Rev. Stat. § 120A.590(2).

16     Defendants again move to dismiss this action in its entirety arguing sovereign immunity

17 bars the action and that the B*urford* abstention doctrine applies here warranting dismissal. *See*

18 *generally* ECF No. 48. They further argue that this action should be dismissed because this court

19 either lacks subject matter jurisdiction (or should decline to exercise any jurisdiction pursuant

20

21 [6] NRS 120A.113 specifically defines "property." It include, but is not limited to: (1) all income from or
   increments to the property, (2) money, virtual currency or interest, or a payroll card, dividend, check,

22 draft or deposit; (3) a credit balance, customer's overpayment, stored-value card, security deposit, refund,
   credit memorandum, unpaid wage, unused ticket for which the issuer has an obligation to provide a

23 refund, mineral proceeds or unidentified remittance; (4) a security; (5) a bond, debenture, note or other
   evidence of indebtedness; (6) money deposited to redeem a security, make a distribution or pay a

24 dividend; (7) an amount due and payable under the terms of an annuity or insurance policy; and (8) an
   amount distributable from a trust or custodial fund established under a plan to provide health, welfare,

25 pension, vacation, severance, retirement, death, stock purchase, profit sharing, employee savings,
   supplemental unemployment insurance or similar benefits.

26 [7] *See* Nev. Rev. Stat. § 120A.530 (rules for taking custody of property).
   [8] *See* Nev. Rev. Stat. § 120A.560 (setting forth how one reports abandoned property).

1  to Fed. R. Civ. P. 12(b)(1)), the plaintiffs lack standing, the plaintiffs have failed to state a claim

2  upon which relief can be granted, and because the individual defendant are entitled to qualified

3  immunity. *Id.* Plaintiffs oppose the motion, arguing this court indeed has jurisdiction, noting

4  that the SAC only seeks prospective relief, that this action is exempt from sovereign immunity,

5  that none of the abstention doctrines relied upon by the defendants apply here, that the SAC

6  properly sets forth claims upon which relief can be granted, and finally, that qualified immunity

7  is inapplicable here. *See generally* ECF No. 52.

8         Because this court must determine whether jurisdiction exists before analyzing the

9  merits of the plaintiffs' claims, *Arbaugh v. Y&H Corp.*, 546 U.S. 500, 514 (2006), I again begin

10  resolution of the defendants' request to dismiss this action by addressing their jurisdictional

11  challenges to this action.

12         A.  **This court has jurisdiction over this action.**

13              *1.  Sovereign immunity*

14         Defendants' argument that this action is barred by sovereign immunity is foreclosed by

15  *Garza*. Here, like in *Garza*, the plaintiffs' allegations are related to the state possessing their

16  property, their request to return that money, and the alleged unconstitutional acts that led to

17  their property being seized, are sufficient to survive a motion to dismiss. *See Garza*, 2025 WL

18  2435221, at *5. In *Garza*, the court first explained, "when officials acting on behalf of the

19  sovereign hold others' property, a suit seeking return of the property is not barred by sovereign

20  immunity when the plaintiff alleges 'the taking of the property or the injury to it was not the

21  action of the sovereign because [it was] unconstitutional or beyond the officer's statutory

22  powers.'" *Id.* (quoting *Larson v. Domestic & Foreign Com. Corp.*, 337 U.S. 682, 698 (1949)). It then

23  applied *Taylor v. Westly (Taylor I)* and held that sovereign immunity did not apply where the

24  plaintiffs' alleged that the defendants possessed their property, they sought its return, and that

25  "unconstitutional acts [that] led to its seizure" *Id.* (citing 402 F.3d 924, 926, 930–35 (9th Cir.

26

1  2005). Accordingly, as the facts in this case are quite similar to those in *Garza*, the defendants'

2  motion to dismiss based on sovereign immunity is denied.

3       ## 2. *Standing*

4       There is no dispute that to establish standing, a plaintiff "must have suffered an injury in

5  fact—an invasion of a legally protected interest which is (a) concrete and particularized . . . and

6  (b) actual or imminent, not conjectural or hypothetical." *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560

7  (1992) (internal citations omitted). Indeed, injury in fact is the "first and foremost of standing's

8  three elements." *Spokeo, Inc. v. Robins*, 578 U.S. 330, 338–39 (2016) (quoting *Steel Co. v. Citizens for*

9  *Better Env't*, 523 U.S. 83, 103 (1998)). Defendants argue that the plaintiffs lack standing because

10 they fail to allege an injury in fact. ECF No. 48 at 24–26. Again, the defendants' argument is

11 foreclosed by *Garza*, as the Ninth Circuit made clear that

12         [f]or purposes of standing, when someone—even the government—possesses
           property lawfully owned by another without the owner's consent, an invasion of
13         the owner's legally protected interest has occurred.

14 *Garza*, 2025 WL 2435221, at *3 (citing *United States v. $133,420.00 in U.S. Currency*, 672 F.3d 629, 638

15 (9th Cir. 2012) ("Article III's standing requirement is thereby satisfied because an owner or

16 possessor of property that has been seized necessarily suffers an injury that can be redressed at

17 least in part by the return of the seized property." (citation omitted)). Here, the plaintiffs have

18 alleged they are the owners of the property identified in the SAC that was, as alleged, unlawfully

19 seized by the state. Almost exactly like Arizona, Nevada defines "Owner" as "a person who has a

20 legal or equitable interest in property subject to this chapter or the person's legal

21 representative." *Compare* Nev. Rev. Stat. § 120A.100 *with* Ariz. Rev. Stat. § 44-301(13) ("'Owner'

22 means a person who has a legal or equitable interest in property that is subject to [the UPA].").

23       Thus, the plaintiffs have alleged a "concrete invasion of a legally protected interest."

24 *Garza*, 2025 WL 2435221, at *3. Plaintiffs also allege that the state seized their property "without

25 notice, [ ] knowledge, or consent." ECF No. 46 at ¶¶ 11 (Raymond), 24 (Gina), 31 (Chase).

26 "When the government assumes physical possession of another's unclaimed property, there is no

1 ambiguity as to its position on the status of that property. And when it does so without

2 providing due process or just compensation, the owner has suffered sufficient injury to confer

3 standing to challenge the government's action." *Garza*, 2025 WL 2435221, at *4; *see also Van v.*

4 *LLR, Inc.*, 962 F.3d 1160, 1162–63 (9th Cir. 2020) ("[W]e hold that the temporary loss of use of

5 one's money constitutes an injury in fact for purposes of Article III."). Plaintiffs have therefore

6 established standing here, and the defendants' motion to dismiss for lack of thereof is denied.[9]

7               **3.   Burford *abstention is inappropriate here.***

8          Defendants also ask that I dismiss this action pursuant to the *Burford* abstention

9 doctrine. *Burford* abstention "is concerned with protecting complex state administrative

10 processes from undue federal interference." *New Orleans Pub. Serv., Inc. v. Council of New Orleans*

11 *(NOPSI)*, 491 U.S. 350, 362 (1989). The Supreme Court held that "[w]here timely and adequate

12 state court review is available," district courts sitting in equity should abstain from

13          interfer[ing] with the proceedings or orders of state administrative agencies" under
          two conditions: '(1) when there are 'difficult questions of state law bearing on
14          policy problems of substantial public import whose importance transcends the
          result in the case then at bar'; or (2) where the 'exercise of federal review . . . would
15          be disruptive of state efforts to establish a coherent policy with respect to a matter
16          of substantial public concern."

17 *NOPSI*, 491 U.S. at 361 (quoting *Colo. River Water Conversation Dist. v. United States* , 424 U.S. 800,

18 814 (1976)). As explained in *Quackenbush v. Allstate Ins. Co.*, the decision to decline to exercise

19 jurisdiction pursuant to an abstention doctrine is an equitable one that "balances the strong

20 federal interest in having certain classes of cases, and certain federal rights, adjudicated in

21 federal court, against the State's interests in maintaining "uniformity in the treatment of an

22 'essentially local problem,'" and retaining local control over "difficult questions of state law

23 bearing on policy problems of substantial public import." 517 U.S. 706, 728 (1996) (citing *NOPSI*,

24 491 U.S. at 362 (quoting *Ala. Pub. Serv. Comm'n v. S. Ry. Co.*, 341 U.S. 341, 347 (1951)) and *Colorado*

25 _____

26 [9] Because *Garza* makes clear the plaintiffs have standing, and the defendants' additional causation and redressability arguments do not persuade me to find to the contrary, I decline to grant their motion to dismiss on those grounds.

*River*, 424 U.S. at 814))) (cleaned up). But that "balance only rarely favors abstention" as *Burford* abstention represents an "extraordinary and narrow exception to the duty of the District Court to adjudicate a controversy properly before it." *Quackenbush*, 517 U.S. at 728 (citing *Colorado River*, 424 at 813 (quoting *County of Allegheny v. Frank Mashuda Co.*, 360 U.S. 185, 188 (1959)).

To determine if abstention is appropriate under *Burford* here, I am to consider if: (1) "the state has concentrated suits involving the local issue in a particular court; (2) the federal issues are not easily separable from the complicated state law issues with which the state court may have special competence; and (3) [ ] federal review might disrupt state efforts to establish a coherent policy." *Poulos v. Caesars World, Inc.*, 379 F.3d 654, 671 (9th Cir. 2004) (quoting *Tucker v. First Md. Sav. & Loan, Inc.*, 942 F.2d 1401, 1405 (9th Cir. 1991)). Taking those factors into account, I find abstention is unwarranted here. While the state recognizes this requirement in its motion to dismiss,[10] there is no information before the court that the state has "chosen to concentrate suits challenging the administrative action in a particular court." *Poulos*, 379 F.3d at 671. Indeed, this court is unaware of any other action bringing this sort of challenge to NUUPA in any court. Thus, a threshold requirement for me to exercise *Burford* abstention is not met here, so I decline to do so. *See Burford v. Sun Oil Co.*, 319 U.S. 315, 327–34 (1943) (finding abstention should be exercised out of "sound respect for the independence of state action" because Texas had created a centralized system of judicial review of commission orders to address complex oil and gas regulations).

**B. Defendants' motion to dismiss for failing to state a claim is granted in part and denied in part.**

Defendants argue that the plaintiffs fail to allege viable 42 U.S.C. § 1983 claims under the Fifth and Fourteenth Amendment. *See* ECF No. 48 at 29–38. Plaintiffs aver that the SAC properly sets forth violations of both the Fifth and Fourteenth amendments, arguing that, in its

---

[10] ECF No. 48 at 28.

1  current form, NUUPA permits an unlawful taking by the state and deprives them of due process

2  for failing to provide pre-deprivation notice. ECF No. 52 at 16–21.

3       *1. NUUPA does not violate the Fifth Amendment's Takings Clause.*

4     The Takings Clause provides that "'private property" shall not 'be taken for public use,

5  without just compensation.'" *Phillips v. Wash. Legal Found.*, 524 U.S. 156, 164 (1998) (quoting U.S.

6  Const. amend. V); *see also Chicago, Burlington & Quincy R.R. v. Chicago*, 166 U.S. 226, 238–39 (1897)

7  (incorporating the Takings Clause to the States through the Fourteenth Amendment). To

8  establish a violation of the Takings Clause, plaintiffs must demonstrate that they possess a

9  constitutionally protected property interest, and that there has been a taking of that property.

10  *Engquist v. Or. Dep't of Agric.*, 478 F.3d 985, 1002 (9th Cir. 2007). Property interests deemed

11  protected under the Fifth Amendment are creatures of common law or statute. *See Phillips*, 524

12  U.S. at 164; *Bd. of Regents of State Coll. v. Roth*, 408 U.S. 564, 577 (1972).

13     Defendants argue that the plaintiffs essentially protest the "transfer of custody [of their

14  property] from the holder to the State," noting that the plaintiffs made a claim for their property,

15  and it was returned to them. ECF No. 48 at 37. They argue that "[b]y no stretch of the

16  imagination can that [process] be deemed a 'taking.'" *Id.* (*citing In re Folding Carton Antitrust Lit.*,

17  744 F.2d 1252, 1255 (7th Cir. 1984) (where statute "permits an entitled claimant to recover from

18  the United States," "the escheat is impermanent," and thus there is "no unconstitutional

19  taking.")). Plaintiffs respond that the defendants' enforcement of NUUPA is a "per se" taking,

20  arguing that the Supreme Court recently held that a state commits a physical taking "when the

21  government physically takes possession of property without acquiring title to it." ECF No. 52 at

22  20 (citing *Cedar Point Nursery v. Hassid*, 594 U.S. 139, 147 (2021)). Plaintiffs further argue that the

23  fact that they filed a claim and received their property back does not remedy the state's "taking"

24  *Id.*

25

26

1       Plaintiffs' arguments are unavailing as *Garza* and other Ninth Circuit precedent makes

2  clear: where unclaimed property is held in trust by the state, the property has not been taken.

3  *Garza*, 2025 WL 2435221, at *6 ("[W]here unclaimed property is 'held in trust' by the state, the

4  property 'has not been taken at all.'" (quoting *Taylor I*, 402 F.3d at 926)). Consequently, the

5  defendants' motion to dismiss the alleged violations of the Takings Clause is granted.

6                *2.  The deprivation of property may violate the Fourteenth Amendment.*

7       Defendants argue that the plaintiffs have failed to state a violation of their due process

8  rights under the Fourteenth Amendment, contending that the plaintiffs' argument that they

9  were deprived of notice is without merit for three reasons: (1) the property at issue is

10  abandoned, so the plaintiffs have no protected property right in the property; (2) the transfer of

11  the property from the original holder to the state does not involve an "adjudicative proceeding,"

12  so full due process protections are not triggered; and (3) NUUPA affords sufficient notice that

13  the plaintiffs property has been abandoned and is being held by the state. *See* ECF No. 48 at 30–

14  36. Plaintiffs' argument that they have sufficiently pled a violation of procedural due process

15  claim, and that the defendants' argument that those who abandon property under applicable,

16  self-executing state law no longer have a right to due process protections, is unavailing. ECF No.

17  52 at 16–22.

18       The Fourteenth Amendment to the United States Constitution provides that "[n]o state

19  shall . . . deprive any person of life, liberty or property, without due process of laws." U.S. Const.

20  amend. XIV. Thus, to establish a "substantive due process claim, a plaintiff must, as a threshold

21  matter, show a government deprivation of life, liberty, or property." *Nunez v. City of Los Angeles*, 147

22  F.3d 867, 871 (9th Cir. 1998). Once that threshold requirement is met, a plaintiff must show two

23  elements: "(1) a protected property interest . . . and (2) a denial of adequate procedural

24  protections." *Pinnacle Armor, Inc. v. United States*, 648 F.3d 708, 716 (9th Cir. 2011) (citations

25  omitted); *see also Portman v. County of Santa Clara*, 995 F.2d 898, 904 (9th Cir. 1993) ("A section

26  1983 claim based upon procedural due process . . . has three elements: (1) a liberty or property

1  interest protected by the Constitution; (2) a deprivation of the interest by the government; (3)

2  lack of process.").

3      The SAC alleges that the plaintiffs' property was "seized" and thereafter they were

4  deprived of their property by the state without notice, knowledge, or consent. *See* ECF No. 46 at

5  ¶¶ 11 (Raymond), 24 (Gina), 31 (Chase). Defendants do not dispute the plaintiffs' property was

6  taken. In fact, it was returned to them utilizing the NUUPA claims process, so their property

7  interest is established.[11] The court turns to whether the SAC plausibly alleges a due process

8  violation. As explained in *Garza*, any significant taking of property by the state, including

9  temporary or nonfinal ones, are within the purview of the Due Process Clause. *See Garza*, 2025

10 WL 2435221, at *7 (citing *Fuentes v. Shevin*, 407 U.S. 67, 85–86 (1972)). Defendants' arguments

11 that NUUPA somehow is exempted from basic due process requirements because there is no

12 "adjudicative proceeding" is unconvincing at this stage of the litigation. Indeed, the defendants

13 ask this court to read *Mullane v. Central Hanover Bank & Tr. Co.*, 339 U.S. 306 (1950) and *Texaco, Inc. v.*

14 *Short*, 454 U.S. 516 (1982) "together" to find that the tenets of due process do not apply here. *See*

15 ECF No. 48 at 33. But, the *Garza* court explained the Supreme Court has "suggested that [while]

16 substituting the state for the holder [does] not deprive owners of their property, it [also] made

17 clear that the transfer of accounts to the state remained 'subject to the requirements of

18 procedural due process" and that a state "'may compel the surrender to it of' presumably

19 abandoned bank accounts by a procedure satisfying constitutional requirements"). *Garza*, 2025

20 WL 2435221, at *8 (citing *Anderson Nat'l Bank v. Luckett*, 321 U.S. 233, 240, 241–42 (1944))

21 (internal quotations omitted). Further, the court's obligation is to determine if the plaintiffs

22 _____

23 [11] Defendants attempt to argue that the plaintiffs do not have a protected property interest because plaintiffs abandoned their property. *See* ECF No. 48 at 33–34 ("[T]hose who abandon their property under applicable, self-executing state law no longer have a right protected by the Due Process Clause. . .

24 ."). This argument is foreclosed by *Garza*, which found that the Arizona version of the unclaimed property act "itself recognizes that owners have a property interest in presumptively abandoned property" and

25 allows owners to file claims to that property for thirty-five years after it is possessed by Arizona Department of Revenue. *Garza*, 2025 WL 2435221, at *7. While the timeline for the state taking

26 possession of the presumptively abandoned property is different in Nevada, NUUPA's claims process is similar to Arizona's.

have pled facts that, when accepted as true, are sufficient to state a claim to relief that is plausible on its face, while drawing "the reasonable inference that the defendant is liable for the misconduct alleged." *In re Fitness Holdings Int'l, Inc.*, 714 F.3d 1141, 1144 (9th Cir. 2013) (cleaned up). The court declines to "read together" two factually distinct cases[12] to find the plaintiffs have failed to allege a plausible due process claim. In fact, doing so would run afoul of the well-established case law requiring the court to construe the pleadings in the light most favorable to the plaintiffs. *See id.* at 1144–45. Defendants cite to no other authority that would allow this court to find the plaintiffs have not plausibly pled a substantive due process claim, so their motion to dismiss the plaintiffs' due process claim is denied.

   **C.  Qualified immunity does not apply here.**

   Defendants argue they are shielded from "their individual capacity damages claims" on qualified immunity grounds. ECF No. 48 at 38–40. Qualified immunity shields government officials from individual civil liability unless a plaintiff establishes that: "(1) the official violated a constitutional right; and (2) that right was clearly established at the time of the challenged conduct, such that every reasonable official would have understood that what he is doing violates that right." *Morales v. Fry*, 873 F.3d 817, 821 (9th Cir. 2017) (simplified). Plaintiffs respond there is no basis to assert qualified immunity here as defendants are being sued in their official, not individual, capacities. ECF No. 52 at 21. Indeed, each defendant is sued in their official capacity. *See* ECF No. 46 at ¶¶ 37 (Conine), 40 (Anthony). The Ninth Circuit explicitly stated that qualified immunity is available only to officials sued in their individual capacities and not to those sued in their official capacities, so the defendants' motion to dismiss based on qualified immunity is denied. *See Cmty. House, Inc. v. City of Boise, Idaho*, 623 F.3d 945, 965 (9th Cir. 2010); *see also Wright v. Beck*, 981 F.3d 719, 737 (9th Cir. 2020).

---

[12] *Mullane* addressed the constitutional sufficiency of notice to beneficiaries on judicial settlement accounts under New York banking laws and *Texaco* involved an escheatment statute related to mineral interests in Indiana.

**D.  Leave to amend the claims is denied.**

Leave to amend should be freely granted when justice so requires unless it is clear the pleading cannot be cured by additional facts. Fed. R. Civ. P. 15(a); *see also Doe v. United States*, 58 F.3d 494, 497 (9th Cir. 1995). Because the Ninth Circuit has squarely resolved questions of standing and jurisdiction on the claims brought by the plaintiffs in both the first and second amended complaints, further amended appears futile and is therefore denied.

## IV.      Conclusion

IT IS HEREBY ORDERED that the defendants' motion to dismiss the complaint [ECF No. 48] is GRANTED in part and DENIED in part. Plaintiffs' claims, allegations, and requested relief related to the allegations that the defendants violated the Fourteenth Amendment (Due Process Clause) survive dismissal. Plaintiffs' claims, allegations, and requested relief related to allegations that the defendants' violated the Fifth Amendment (Takings Clause) are dismissed with prejudice.

IT IS FURTHER ORDERED that the plaintiffs must file a third amended complaint that complies with this order no later than **September 16, 2025**.

IT IS FURTHER ORDERED that the plaintiffs are ordered to file a redacted version of their second amended complaint in compliance with LR IC 6-1 and re-file it utilizing the "Notice of Corrected Image" event no later than **September 3, 2025**.

IT IS FURTHER ORDERED that the plaintiffs' motion for leave to file supplemental authority [ECF No. 57] is DENIED.

Dated: August 29, 2025

_____
Cristina D. Silva
United States District Judge